IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHARLES R. BAUER ) | |
| ) | |
| *Plaintiff*, ) | |
| ) | Case No. 18 C 3634 |
| v. ) | |
| ) | Judge Virginia M. Kendall |
| ROUNDPOINT MORTGAGE ) | |
| SERVICING CORPORATION, ) | |
| CARISBROOK ASSET HOLDING ) | |
| TRUST, WIRBICKI LAW GROUP, ) | |
| UNKNOWN OWNERS and NON- ) | |
| RECORD CLAIMAINTS, ) | |
| ) | |
| *Defendants*. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Charles R. Bauer sued Roundpoint Mortgage Servicing Corporation, Carisbrook Asset Holding Trust, Wirbicki Law Group, LLC, and Unknown Owners and Non-Record Claimants, alleging that his mortgage debt is unenforceable and therefore the defendants' attempts to collect the debt violate a variety of federal and state statutes, including the Truth in Lending Act, the Fair Debt Collection Practices Act, the Real Estate Settlement Procedures Act, the Illinois Consumer Fraud Act, and the Fair Credit Reporting Act. (Dkt. No. 1). Bauer also asks this Court to enter a declaratory judgment quieting title against all defendants. *Id.* In response, Wirbicki moved to dismiss Bauer's two allegations against it (quiet title and FDCPA), while Roundpoint and Carisbrook moved to dismiss all the remaining charges asserted against them for Bauer's failure to sufficiently state his claims. Although the defendants could not legally enforce Bauer's mortgage debt in court, it did remain valid, so many of the claims fail as a matter of law. That said, Bauer adequately pled those counts that allege the defendants threatened to foreclose on Bauer, even though Illinois law procedurally barred them from doing so. Therefore, the Court

grants Wirbicki's motion. As to Roundpoint and Carisbrook's motion, the Court grants it in part and denies it in part.

## BACKGROUND

In February 2006, Bauer executed a $194,4480 note to purchase his home. (Dkt. No. 1 ¶ 4). Bauer's bank, Fox Valley Mortgage Corporation, secured the note by taking a mortgage out on the home. *Id.* Years later, Bauer defaulted on the loan, and JPMorgan, the then-mortgagee, attempted to foreclose on the home. (Dkt. No. 1 ¶ 22) But, in November 2013, the bank voluntarily dismissed its action. (Dkt. No. 1 ¶ 23) Then, in June 2015, JPMorgan voluntarily dismissed its second foreclosure action on the home. (Dkt. No. 1 ¶ 25). In March 2016, the then-mortgagee, U.S. Bank, filed a third foreclosure action. (Dkt. No. 1 ¶ 26). Bauer moved to dismiss it, invoking Illinois's "single refiling rule." (Dkt. No. 1 ¶ 27). Because the rule applied to the foreclosure, the court dismissed the case with prejudice in June 2017. (Dkt. No. 1 ¶ 27). The order stated:

> "IT IS HEREBY ORDERED:
> 1. BAUER'S SECOND §2-619(a)(9) MOTION TO DISMISS COMPLAINT WITH PREJUDICE IS GRANTED AND PLAINTIFF'S COMPLAINT IS DISMISSED WITH PREJUDICE BASED ON THE SINGLE RE-FILING RULE – THIS ORDER IS FINAL AND APPEALABLE[.]"

(Dkt. No. 1-7 at 1). U.S. Bank did not appeal. (Dkt. No. 1 ¶ 29).

Carisbrook, the present owner and holder of the loan, recruited Roundpoint to service the loan. Roundpoint attempted to collect, sending Bauer: (1) eleven billing statements with ever-increasing total amounts due; (2) sending Bauer a Notice of Default and Intent to Accelerate statement; (3) a Notice of Default indicating the "TOTAL [PLAINTIFF] MUST PAY TO CURE THE DEFAULT" and stating that if the alleged default "is not cured by 08/23/2017, Roundpoint may take steps to terminate [Bauer's] ownership in the property by acceleration of sums secured by mortgage, foreclosure by judicial proceeding, and sale of the Property." (Dkt. No. 1 at 7–8

2

(emphasis in original)). Bauer responded to Roundpoint, delivering a notice of error ("NOE #1"), which advised Roundpoint that it was attempting to collect a debt that was uncollectible. Roundpoint answered NOE #1 and stated:

> "As of the date of this letter, the loan is due for September 1, 2011 payment in the amount of $1,824.64, as well as all subsequent payment and fees. The unpaid principal balance of the loan is $178,949.22."

(Dkt. No. 1-11 at 1 ("Response to NOE #1")). Bauer disagreed, alleging that Roundpoint did not address his contention that the loan was unenforceable, and that Roundpoint still intended to collect the loan on behalf of Carisbrook. (Dkt. No. 1 ¶ 46). Roundpoint again attempted to collect the debt. (Dkt. No. 1 ¶ 47).

Bauer answered by sending Roundpoint a second notice of error ("NOE #2"). (Dkt. No. 1 ¶ 48). At this point, Roundpoint's counsel, Wirbicki, responded, asserting that the voluntary dismissal of the second foreclosure did not have the effect of making the loan extinguished or entirely unenforceable. (Dkt. No. 1 ¶ 50); (Dkt. No. 1-13) ("Response to NOE #2) ("The borrower's obligation created by the subject Note and Mortgage remain valid, due and owing.")). Thereafter, Roundpoint continued its efforts to not only collect the loan, but also reported the negative information to credit agencies, alleging delinquent payments of debt of 120 days or more for each month since the second voluntary dismissal. (Dkt. No. 1 ¶¶ 51–53). Bauer disputed this debt with Roundpoint because these actions detrimentally affected Bauer's credit. (Dkt. No. 1 ¶ 54).

## **LEGAL STANDARD**

A Rule 12(b)(6) motion challenges the legal sufficiency of the complaint. For purposes of a motion to dismiss, the Court "'accept[s] as true all of the well-pleaded facts in the complaint and draw[s] all reasonable inferences in favor of the plaintiff.'" *Calderon-Ramirez v. McCament*, 877

F.3d 272 (7th Cir. 2017), *reh'g denied* (Jan. 19, 2018) (quoting *Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016)). To survive a motion to dismiss, a plaintiff's complaint must allege facts which, when taken as true, "'plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level.'" *Cochran v. Ill. State Toll Highway Auth.*, 828 F.3d 597, 599 (7th Cir. 2016) (quoting *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007)).

"Specific facts are unnecessary, but the complaint must give the defendant fair notice of what the claim is and the grounds upon which it rests." *Huri v. Office of the Chief Judge of the Circuit Court of Cook Cty.*, 804 F.3d 826, 832 (7th Cir. 2015). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In addition, a "plaintiff's obligation to provide the grounds of [her] entitle[ment] to relief requires more than labels and conclusion." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 739 (7th Cir. 2014) (citation omitted). The Court reads the complaint as a whole and then assesses its plausibility. *See Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011).

## DISCUSSION

Bauer alleges that the state court's dismissal of the third foreclosure action relieved him of his mortgage debt. The defendants, both individually and collectively, argue that the dismissal order merely procedurally bars another foreclosure action based on the same theory of default. In their view, the debt remains. Therefore, the defendants say, their solicitations of Bauer to procure the satisfaction of his obligation cannot be unlawful. Bauer disagrees and asserts that: (1) all defendants' title must be quieted because they have no legally cognizable interests; (2) Carisbrook violated the Truth in Lending Act by sending false and misleading mortgage billing statements;

4

(3) Roundpoint violated the Fair Debt Collection Practices Act because it falsely represented Bauer's debts in the mortgage billing statements, it threatened foreclosure, it disclosed information regarding the debt to credit reporting agencies, it used an agent to falsely communicate the loan's status and then used deception to collect it, and it—along with Wirbicki—falsely represented the legal character of the loan by representing that it could enforce it against Bauer; (4) Roundpoint violated the Real Estate Settlement Procedures Act by not substantively responding to Bauer's notice of errors; (5) Roundpoint violated the Illinois Consumer Fraud Act because of its false claims regarding owed amounts, required fees, loan enforcement, foreclosure, and credit; and (6) Roundpoint violated the Fair Credit Reporting Act by divulging incomplete or inaccurate information pertaining to Bauer's loan.

As an initial matter, Bauer contends that the third foreclosure action was a "final adjudication [that] proves that the loan balance on the . . . referenced loan is $0". (Dkt. 1-10 at 1). In Illinois, if the plaintiff voluntarily dismisses a cause of action, "the plaintiff . . . may commence a new action within one year or within the remaining period of limitation, whichever is greater . . . after the action is voluntarily dismissed by the plaintiff." 735 ILCS 5/13–217 (1994) (the single refiling rule). Although the plaintiff's right to refile is "absolute," this right is not limitless, and § 13–217 permits only one such refiling. *First Midwest Bank v. Cobo*, 2017 IL App (1st) 170872, ¶ 15, *appeal allowed*, 95 N.E.3d 480 (Ill. 2018); *Timberlake v. Illini Hospital*, 676 N.E.2d 634 (1997). Therefore, the defendants cannot file a third foreclosure action "because Illinois statute 735 ILCS 5/13-217 does not allow a party to file a third cause of action after voluntarily dismissing the same action twice before." *See, e.g.*, *Webster Bank, N.A. v. Pierce & Assocs., P.C.*, No. 16 C 2522, 2016 WL 6082356, at *2 (N.D. Ill. Oct. 18, 2016); *Skibbe v. U.S. Bank Tr., N.A. for LSF9 Master Participation Tr.*, 309 F. Supp. 3d 569, 572 (N.D. Ill. 2018) (citing *Timberlake*,

5

676 N.E.2d at 634) ("Pursuant to section 13–217, this third action to foreclose defendants' mortgage is barred even though it was filed within the applicable 10–year statute of limitations" (citation omitted)).

Although the single refiling rule prevents the defendants from pursuing another foreclosure action, extinguishing their legal remedy, the rule does not extinguish the right to the underlying debt—that remains. *See Midland Funding, LLC v. Johnson*, 137 S. Ct. 1407, 1411–12 (2017); *Pantoja v. Portfolio Recovery Assocs., LLC*, 852 F.3d 679, 684 (7th Cir. 2017), *cert. denied*, 138 S. Ct. 736 (2018) (explaining that Illinois treats a "debt as a debt" because "[t]he creditor retains the legal right to appeal to the debtor to honor the debt out of a sense of moral obligation even if the legal obligation can no longer be enforced in court"); *Owens v. LVNV Funding, LLC*, 832 F.3d 726, 731 (7th Cir. 2016) (citing *Fleming v. Yeazel*, 40 N.E.2d 507, 508 (1942) ("[T]he statute of limitations controls the remedy for recovery of the debt, but the debt remains the same as before, excepting that the remedy for enforcement is gone.")).

Indeed, a creditor retains some right to payment, even if its remedy is no longer a legal one but a moral one. *See Buchanan v. Northland Grp., Inc.*, 776 F.3d 393, 396–97 (6th Cir. 2015) (recognizing that a time-barred "debt remains a debt even after the statute of limitations has run on enforcing" and "[t]here thus is nothing wrong with informing debtors that a debt remains unpaid" and "to let the debtor know what the debt is and to ask her to pay it"); *HBLC, Inc. v. Egan*, 2016 IL App (1st) 143922 (2016) (citing *Huertas v. Galaxy Asset Management*, 641 F.3d 28, 32–33 (3d Cir.2011) (noting that "the FDCPA permits a debt collector to seek voluntary repayment of the time-barred debt so long as the debt collector does not initiate or threaten legal action in connection with its debt collection efforts").

6

Moreover, a debt once-unenforceable can become enforceable again under certain circumstances. *See Pantoja,* 852 F.3d at 684 ("... if he makes a partial payment or even just a promise to make a partial payment, he risks loss of the otherwise ironclad protection of the statute of limitations."). Similarly, as Wirbicki points out, "[i]f the borrower makes payments, [ ] modifies the loan and defaults on that modification[,] . . . breach[s] the so-called "due on sale" clause in the mortgage. . . [then] a foreclosure could [ ] proceed based on a different theory of relief than that which was already dismissed with prejudice." (Dkt. No. 28 at 2); *see Wells Fargo Bank, N.A. v. Norris*, 2017 IL App (3d) 150764, ¶ 22, *reh'g denied* (Aug. 29, 2017) ("It is clear from the mortgage foreclosure complaint in each case that the 2010 case did not involve the same cause of action as the 2008 [when one involved the original mortgage and the other a violation of a loan modification agreement.]"). Therefore, Wirbicki, in its March 26, 2018 response to Bauer's counsel, correctly stated that "the dismissal . . . with prejudice based on the single refiling rule simply means that the Plaintiff cannot file that same cause of action for the same reasons", not that the debt was extinguished. (Dkt. No. 1-13 at 1).

**I.      Declaratory Judgment to Quiet Title (Count I)**

An action to quiet title "is an equitable proceeding wherein a party seeks to settle a dispute over ownership of property or to remove a cloud upon his title to the property." *See, e.g.*, *Rustom v. Rustom*, No. 17 C 9061, 2018 WL 3997880, at *4 (N.D. Ill. Aug. 21, 2018). "A cloud on title is the semblance of title, either legal or equitable, appearing in some legal form but which is, in fact, unfounded or which it would be inequitable to enforce." *See, e.g.*, *id.* A "prima facie case to quiet title requires that the party bringing the action must (1) possess good or true title to the property and (2) that title, whether legal or equitable, must be superior to other claimants." *See, e.g., id.* Bauer alleges that "[b]y operation of law, the Mortgage no longer constitutes a valid,

enforceable lien on the [h]ome and the Note is uncollectible." (Dkt. No. 1 ¶ 60). True enough, Bauer has title to and possesses the property, but the fact remains that although the debt is neither enforceable or collectible (at least through legal means), it is still valid, and a valid debt, by itself, does not cloud title to property. *See, e.g.*, *Maguire v. Bank of New York Mellon, N.A.*, No. 13-CV-6874, 2015 WL 4079446, at *3 (N.D. Ill. July 6, 2015) (citation omitted). The mortgage is instead a well-founded lien on the home. Therefore, the Court grants the defendants' motions to dismiss Count I.

## II. Truth in Lending Act (Count II)

The Truth in Lending Act is a federal consumer protection statute intended to "assure a meaningful disclosure of all credit terms so the consumer will be able to compare . . . the various credit terms available to him [or her] . . . to avoid an uninformed use of credit, and to protect the consumer against inaccurate [and/or] unfair credit billing practices." 15 U.S.C. § 1601(a). A creditor or mortgage servicer violates the Act by failing to provide a periodic statement for each billing cycle that sets forth certain information, including amounts owed, interest rates, and relevant dates, fees, and contact numbers. *See* 15 U.S.C. § 1638(f); *see, e.g.*, *Saafir v. Bayview Loan Servicing*, LLC, No. CV 17-3735, 2018 WL 1069413, at *3 (D.N.J. Feb. 26, 2018).

Bauer contends that Carisbrook violated the Truth in Lending Act because "[e]ach Mortgage Billing Statement sent to Plaintiff for the period of July, [sic] 2017 through May, [sic] 2018, [Group Exhibit H] contained false and misleading information in that each claimed amounts due pursuant to the Loan which were uncollectible pursuant to the Loan." (Dkt. No. 1 ¶ 69). Bauer does not contest that Carisbrook provided it with mortgage billing statements; rather, he claims those statements contained false and misleading information, depriving him of what he says the Act guarantees. Like many other claims in the complaint, however, this turns on the existence of

8

a valid debt. As set forth above, the state court dismissal did not extinguish the mortgage, so Bauer fails to state a claim under the Act against Carisbrook Accordingly, the Court grants Carisbrook's motion to dismiss Count II.

### III. Fair Debt Collection Practices Act (Count III)

The Fair Debt Collection Practices Act "prohibits the use of 'any false, deceptive, or misleading representation or means in connection with the collection of any debt." *McMahon v. LVNV Funding, LLC*, 744 F.3d 1010, 1019 (7th Cir. 2014) (citing 15 U.S.C. § 1692e). The Act furnishes a nonexclusive list of prohibited practices, including the: false representation of the character, amount, or legal status of any debt (§ 1692e(2)(A)); threat to take any action that cannot legally be taken (§ 1692e(5)); and use of any false representation or deceptive means to collect or attempt to collect any debt (§ 1692e(10)). *See McMahon*, 744 F.3d at 1019.

Bauer asserts five total FDCPA claims: four individual claims under the Act against Roundpoint (1–4) and one collective claim against Roundpoint and Wirbicki (5). First, Bauer argues that Roundpoint violated § 1962e(2)(A) by sending allegedly erroneous mortgage billing statements. Second, Roundpoint violated § 1962e(5) when it sent Bauer a Notice of Default threatening to take legal action that cannot be taken, namely, foreclosure. Third, Roundpoint violated FDCPA when it told credit reporting agencies that the debt was due and not disputed by plaintiff. Fourth, Roundpoint violated either § 1962e(2)(A), § 1962e(10), or both, when it used Wirbicki to falsely communicate the legal status of the loan and also deceptively tried to collect. Fifth, Roundpoint and Wirbicki violated § 1962e(2)(A) in their response to NOE #2, wherein they falsely communicated the legal character of the loan.

The first claim is legally wrong for the same reasons as the Truth in Lending Act claim was, and as are the third, fourth, and fifth claims. Bauer alleges that Wirbicki falsely stated that

the debt was "valid, due, and owing," which Bauer disagrees with and claims is "otherwise unenforceable against Plaintiff." (Dkt. No. 1 ¶¶ 50, 90); (Dkt. No. 1-13 at 2). Wirbicki argues that "Wirbicki's letter did not contain false statements, [sic] but contained factual statements with which Plaintiff disagrees." (Dkt. No. 28 at 3). As explained above, Wirbicki did not make a false statement regarding the validity of the debt. Instead, it correctly stated that "the dismissal . . . with prejudice based on the single refiling rule simply means that the [Defendants] cannot file that same cause of action for the same reasons." (Dkt. No. 1-13 at 1). Bauer's conflation of validity and enforceability assumes the debt was forgiven, which it was not, and it is not "automatically improper for a debt collector to seek re-payment of time-barred debts; some people might consider full debt re-payment a moral obligation, even though the legal remedy for the debt has been extinguished." *McMahon,* 744 F.3d at 1020.

Importantly, Wirbicki did not "threat[en] to take any action that cannot legally be taken," 15 U.S.C. § 1692e, by, for instance, stating "that it would file the same foreclosure again in state court." (Dkt. No. 28 at 2). In fact, Wirbicki, explained that the "Plaintiff cannot file the same cause of action for the same reasons." (Dkt. No. 1-13 at 1). Even an unsophisticated consumer would comprehend these statements. *See Daugherty v. Convergent Outsourcing, Inc.*, 836 F.3d 507, 509 (5th Cir. 2016) (holding that an effort to collect on a time or procedurally-barred debt is not automatically unlawful, but a letter violates the Act if it could lead "unsophisticated consumer" to believe her debt is legally enforceable).

Roundpoint, however, did threaten to foreclose on the home, so Bauer plausibly alleged that claim. Because of the single refiling rule, this was an action that could not legally be taken. *See* 15 U.S.C. § 1692e. Unlike Wirbicki, Roundpoint threatened "to terminate [Plaintiff's] ownership in the property by acceleration of sums secured by the mortgage, foreclosure by judicial

10

proceeding and sale of the Property." (Dkt. No. 28 at 2); (Dkt. No. 1 ¶86). Because these letters included statements regarding foreclosure and did not make clear that the law prohibited Roundpoint from suing to collect (at least based on its currents reasons), they could lead an "unsophisticated consumer into believing that the debt is legally enforceable, regardless of whether the letter actually threatens litigation." *McMahon, LLC*, 744 F.3d at 1020. Consequently, the Court grants the defendants' motions to dismiss Count III, with the exception of Bauer's § 1962e(5) foreclosure threat claim against Roundpoint, which may proceed.

### IV. Real Estate Settlement Procedures Act (Count IV)

The Real Estate Settlement Procedures Act "is a consumer protection statute that regulates the real estate settlement process, including servicing of loans and assignment of those loans." *Catalan v. GMAC Mortg. Corp.*, 629 F.3d 676, 680 (7th Cir. 2011) (citing 12 U.S.C. § 2601 (Congressional findings)). To this end, the Act imposes certain duties on services of federal mortgage loans. *See Perron on behalf of Jackson v. J.P. Morgan Chase Bank, N.A.*, 845 F.3d 852, 856–57 (7th Cir. 2017). One such duty is to promptly respond to borrower inquiries. *See Diedrich v. Ocwen Loan Servicing, LLC*, 839 F.3d 583, 589 (7th Cir. 2016). "The Act gives borrowers a cause of action against a servicer for actual damages suffered 'as a result of' a servicer's failure to comply with these duties." *Perron on behalf of Jackson*, 845 F.3d at 857.

Bauer alleges that Roundpoint violated the Act by failing to correct the errors raised in his NOE #1 and NOE #2. (Dkt. No. 1 ¶¶96-97). Specifically, in NOE #1, Bauer asserted that the state court ruled that the loan is not owed by him. (Dkt. No. 1-10 at 1). In NOE #2 Bauer stated "[p]lease be advised that the Court ruled that the loan is no longer owed by Mr. Bauer. Attached is a copy of the June 9, 2017 Order dismissing the case with prejudice based on the 'single refiling rule.' This is a final adjudication on the mortgage and note." (Dkt. No. 1-10 at 1). Importantly,

Bauer does not complain that Roundpoint's response was untimely under the Act. (Dkt. No. 1 ¶¶ 46 - 50). Instead, Bauer claims that "Roundpoint's Response to NOE #1 did not address or correct the specific error raised, namely, that the Loan was unenforceable pursuant to the Dismissal Order. Instead, Roundpoint's Response to NOE #1 made clear that it still intended to collect the Loan on behalf of Carisbrook despite the Dismissal Order." (Dkt. No. 1 ¶46).

Roundpoint, however, correctly stated that "the court did not hold and there is no authority for the propositions that 'the Court ruled that the loan is no longer owed by Mr. Bauer'" and that the dismissal of the third foreclosure was a "'final adjudication on the mortgage and note'". (Dkt. No. 1-13 at 1). Wirbicki took it one step further and addressed enforceability, explaining that "the Plaintiff cannot file that same cause of action for the same reasons." (Dkt. No. 1-13 at 1). The premise of Bauer's claim under the Act is his familiar fundamental issue with the existence of the debt. In other words, he simply disagreed with Roundpoint's response, but that alone does not give rise to a claim under the Act. *See Bates v. JPMorgan Chase Bank, NA*, 768 F.3d 1126, 1134–35 (11th Cir. 2014) (granting motion for summary judgement in favor of party satisfying its RESPA obligation, reasoning that "[a]lthough [the debtor] was confused and/or unsatisfied with [the] answer, the information provided an explanation . . . as to what happened to her [account] and provided her with contact information for further support. This transparency and facilitation of communication is the goal of RESPA"). Therefore, the Court grants Roundpoint's motion to dismiss Count IV.

### V.     Illinois Consumer Fraud Act (Count V)

The Illinois Consumer Fraud Act is a "regulatory and remedial statute intended to protect consumers, borrowers, and business persons against fraud, unfair methods of competition, and other unfair and deceptive business practices." *Cohen v. Am. Sec. Ins. Co.*, 735 F.3d 601, 608 (7th

Cir. 2013) (citing *Robinson v. Toyota Motor Credit Corp.,* 775 N.E.2d 951, 960 (2002)). To state a claim under the Act, a plaintiff must allege: "(1) a deceptive act or practice by the defendant; (2) the defendant's intent that the plaintiff relies on the deception; and (3) the occurrence of the deception during a course of conduct involving trade or commerce." *Id.*

Bauer alleges that Roundpoint "falsely claimed that Plaintiff owed amounts not due, falsely claimed that Plaintiff was required to pay fees and other charges, falsely claimed the Loan was enforceable, falsely stated that the [h]ome was subject to foreclosure, and falsely represented to third party credit reporting agencies that payments had not been timely made and that the Loan was in default". (Dkt. No. 1 ¶ 104). For the aforementioned reasons, Bauer cannot overcome the validity of the debt, leaving the first (amount owed), second (required fees), and fifth (statements to credit reporting agencies) claims without merit. The remaining two allegations, however, hang on Bauer's contention that Roundpoint "falsely claimed the Loan was enforceable" and "falsely stated that the [h]ome was subject to foreclosure." *Id.* Roundpoint's two statements regarding enforcement and foreclosure sufficiently state claims under the Act because they were plausibly deceptive; it was, of course, Roundpoint's intention for Bauer to rely on these statements in its effort to collect the debt; and lastly, the act occurred in trade or commerce because it involved a promissory note secured by a mortgage. The Court accordingly grants Roundpoint's motion to dismiss Count V, excluding the foreclosure and enforcement claims, which may go forward.

## VI. Fair Credit Reporting Act (Count VI)

The Fair Credit Reporting Act requires entities that furnish information to credit agencies to follow certain rules. *See Hukic v. Aurora Loan Servs.*, 588 F.3d 420, 433 (7th Cir. 2009). "For example, an entity cannot furnish information if it knows or has reasonable cause to know the information is inaccurate." *Id.* at 433–34 (citing 15 U.S.C. § 1681s–2(a)(1)(A)). The Act

"mandates that '[a]fter receiving notice pursuant to section 1681i(a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided' to a consumer reporting agency, the furnisher must conduct an investigation regarding the disputed information and report the results to the agency." *Id.* Ultimately, "[i]f the investigation concludes that a disputed item is inaccurate or cannot be verified, the furnisher must promptly modify, delete, or block the reporting of that information. 15 U.S.C. § 1681s–2(b)(1)(E)." *Id.*

Bauer asserts that after the entry of "of the Dismissal Order, Roundpoint inaccurately or incompletely reported to the three primary CRAs (i.e. Experian, Equifax and TransUnion) that Plaintiff is in default and delinquent on payments on the Note." (Dkt. No. 1 ¶ 117). Again, under the mistaken notion that the third foreclosure's dismissal extinguished the debt, Bauer believes that "Roundpoint has reported incomplete or inaccurate information about Plaintiff's Loan to the CRAs on at least 10 separate occasions from June 9, 2017 to the date th[e] complaint was filed." (Dkt. No. 1 ¶ 118). Therefore, Plaintiff asserts "Roundpoint, violated one or more of its duties under the FCRA by, among other things, negligently and willfully furnishing to the CRAs incomplete and inaccurate information that a balance still remains due on the Loan and that Plaintiff has failed to make payments on the Loan since the Court entered the Dismissal Order." (Dkt. No. 1 ¶ 122). The only false statements alleged to have been made to the credit reporting agencies pertain to the delinquent debt. That debt was not extinguished, so the information regarding it was complete and accurate, and no amount of investigation could have proven otherwise. An entity does not furnish false information simply by informing the agencies that the debtor is behind on his payments. *See Hukic*, 588 F.3d at 433. The Court therefore grants Roundpoint's motion to dismiss Count VI.

14

## **CONCLUSION**

For the reasons set forth above, the Court grants the defendants' motions to dismiss all Counts I–VI, exempting Bauer's one claim under the Fair Debt Collection Practices Act and two claims under the Illinois Consumer Fraud Act concerning Roundpoint's threats to foreclose or legally enforce the mortgage debt. As to those three claims, the Court denies Roundpoint's motion to dismiss.

_____
Virginia M. Kendall
United States District Judge

Date: October 29, 2018